**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **ROGER MATIAS**, <br><br> Plaintiff, <br><br> v. <br><br> **ABBOTT LABORATORIES, INC.,** *et al.*, <br><br> Defendants. | Civil Action No. 24-10328 (ZNQ) (TJB) <br><br> **OPINION** |

**QURAISHI, District Judge**

    **THIS MATTER** comes before the Court upon a Motion to Dismiss or Change Venue filed by Defendants Abbott Laboratories, Inc., Abbott Point of Care, Inc., (together, "Abbott") and Allison Sirchio (collectively, "Defendants"). ("Motion," ECF No. 5.)[1] Defendants filed a Moving Brief in support of the Motion ("Moving Br.," ECF No. 5), a declaration of Deborah Boskovic, Employee Relations Manager at Abbott ("Boskovic Decl.," ECF No. 5-1), a copy of the employee agreement at issue (ECF No. 5-1), and an unrelated state court complaint involving Plaintiff Roger Matias ("Plaintiff") against non-party Citizens Property Insurance Corporation in the Eleventh Judicial Circuit Court in Miami-Dade County Florida (ECF No. 5-1).[2] Plaintiff filed a Brief in Opposition ("Opp'n Br.," ECF No. 10) and a chart purporting to illustrate that the United States

---

[1] Although Defendants' Motion is titled as a motion to dismiss, or in the alternative, to transfer venue, the Court reviews the Motion as a motion to transfer venue under 28 U.S.C. § 1404(a). *See Atl. Marine Constr. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 51, 61 (2013) (noting that the appropriate mechanism to enforce forum selection clauses is through Section 1404(a)).

[2] Defendants appear to submit a copy of this complaint to demonstrate that Plaintiff is a Florida resident to rebut allegations made in this case.

District Court for the District of New Jersey is "less congested" than the United States District Court for the Northern District of Illinois, the proposed transferee court (ECF No. 10-1). Defendants filed a Reply Brief. ("Reply Br.," ECF No. 14.) The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.[3] For the reasons set forth below, the Court will **GRANT** the Motion and transfer the matter to the United States District Court for the Northern District of Illinois.

## I.      BACKGROUND AND PROCEDURAL HISTORY[4]

Plaintiff filed his initial complaint in the Superior Court of New Jersey, Mercer County, on October 3, 2024. (ECF No. 1.) Defendants timely removed the case to this Court. (*Id.*) On December 6, 2024, at 5:25 p.m., Defendants filed an Answer to the Complaint. (ECF No. 4.) Five minutes later, at 5:30 p.m., Defendants filed the instant Motion to Dismiss, or in the alternative, to Transfer Venue to the Northern District of Illinois. (ECF No. 5.) Although the Motion was filed five minutes after the Answer and asserts defenses that must be presented at the first opportunity, *see* Fed. R. Civ. P. 12, the Court uses its discretion to consider the Motion as timely filed. *See Landcare USA, LLC v. LaCapra*, Civ. No. 16-991, 2016 WL 11779380, at *2 (M.D. Fla. Sept. 20, 2016) ("[W]here the Motion to Dismiss and Answer are filed simultaneously, as they were here— electronically on the same day at 3:00 p.m. and 3:07 p.m.—the Court has the discretion to view the Motion as having preceded the Answer and having been timely presented."); *Wurth Baer Supply Co. v. Strouse*, 627 F. Supp. 3d 422, 433 n.71 (M.D. Pa. 2022) ("[E]ven if the filings were made simultaneously, the Court has the discretion to consider the motion to dismiss."); *Kimbrell*

---

[3] Hereinafter, all references to "Rule" or "Rules" refer to the Federal Rules of Civil Procedure unless otherwise noted.
[4] The following facts are derived from the Amended Complaint and taken as true for purposes of this Motion. *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

*v. Brown*, Civ. No. 09-511, 2009 WL 5064384, at *2 (S.D. Ill. Dec. 17, 2009) ("[W]hen [a motion to dismiss and answer are] filed contemporaneously, courts often consider the motion to dismiss to predate the answer."); *Invamed, Inc. v. Barr Labs., Inc.*, 22 F. Supp. 2d 210, 215 (S.D.N.Y. 1998) ("Although Fed. R. Civ. P. 12(b) encourages the responsive pleader to file a motion to dismiss before pleading, nothing in the rule prohibits the filing of a motion to dismiss with an answer."); *Smith v. LaFollette*, Civ. No. 93-2639, 1994 WL 142877, at *10 (7th Cir. 1994) ("[C]ourts have allowed . . . motions [to dismiss] to be brought after the answer has been filed, particularly where, as here, resolution of the motion will determine whether the lawsuit goes forward."); *Kuhlmeier v. Hazelwood Sch. Dist.*, 578 F. Supp. 1286, 1290 (E.D. Mo. 1984) ("It is the opinion of this Court that the preferred rule to apply in situations where a defendant files his Rule 12(b) motion simultaneously with his answer is that the motion should be 'view[ed] as having preceded the answer and thus as having been interposed in a timely fashion.'" (quoting 5 Wright & Miller, Federal Practice and Procedure: Civil § 1361 at 634 (1969)).)

After the Motion and Answer were filed, Plaintiff filed an Amended Complaint. ("Am. Compl.," ECF No. 7.) As alleged in the Amended Complaint, Plaintiff was a former employee of Abbott, where he worked as Senior Product Manager of the Global Core Assay Portfolio. (*Id.* ¶¶ 1, 12.) Abbott is in the pharmaceutical and healthcare industry and creates medical device products. (*Id.* ¶ 10.) Allison Sirchio ("Sirchio") is the Director of Global Strategic Marketing and is being sued in her individual capacity as an agent of Abbott. (*Id.* ¶ 6.)

Relevant here, when Plaintiff joined Abbott on or about June 28, 2022, he signed an employment agreement (the "Agreement").[5] (*See* ECF No. 5-1.) The Agreement contains a non-

---

[5] The Court can look to evidence outside the pleadings because "[i]n deciding a § 1404(a) motion, a court is not limited to the pleadings, and may consider affidavits and other evidence." *Beaumont v. Vanguard Logistics Servs. Inc.*, 615 F. Supp. 3d 253, 259 (D.N.J. 2022); *Roller v. Red Payments LLC.*, Civ. No. 18-1834, 2019 WL 3802031, at *4 (E.D. Pa. Aug. 12, 2019).

competition provision that limits Plaintiff's employment for twelve months in any country where Abbott conducts business. (Agreement ¶ 1, 9.) The Agreement also contains a choice of law and forum selection clause:

> **Choice of Law**. This Agreement shall be construed, and its enforceability and the relationship of the parties shall be determined, in all respects under the laws of Illinois, without giving effect to conflict of laws.
>
> . . .
>
> **Jurisdiction/Venue.**
>
> The parties agree to the exclusive jurisdiction of the state and federal courts in Illinois, in any action or proceeding arising out of or relating to this Agreement or the transactions contemplated hereby, and further irrevocably agree that all claims in any such action or proceeding shall be heard and determined in Lake County, Illinois state court or the Northern District of Illinois federal court. Both parties waive any objection to the laying of venue of any such action or proceeding in any of the Lake County, Illinois state courts or Northern District of Illinois federal courts, as well as any claim that a party may have that any such action or proceeding has been brought in an inconvenient forum. EMPLOYEE stipulates and consents to Illinois courts' personal jurisdiction and waives the right to object to an Illinois court's jurisdiction.

(Agreement ¶¶ 15, 16.) In addition to the Agreement, Plaintiff received a $30,000 sign on bonus that he would have to repay, either in full or half, if he did not complete twelve or twenty-four months respectively of continuous service. (Am. Compl. ¶ 26.)

After working for Abbott for close to two years, on May 6, 2024, Plaintiff was approved for intermittent leave under the Family Medical Leave Act ("FMLA") and the New Jersey Family Leave Act ("NJFLA") following the serious cancer diagnosis of his mother. (*Id.* ¶¶ 14, 15.) His leave was approved through July 18, 2024. (*Id.* ¶ 15.) Despite being granted leave, Plaintiff alleges that on June 3, 2024, "Defendants retaliated against Plaintiff for exercising his right to take FMLA/NJFLA leave by suddenly terminating his employment." (*Id.* ¶ 18.) Plaintiff alleges that

Defendants did not provide a reason for his termination and that they failed to accommodate Plaintiff and his mother's disability, which resulted in lost income and severe emotional distress. (*Id.* ¶¶ 21, 24.)

In addition to the asserting injuries due to violations of the FMLA and NJFLA, Plaintiff alleges that on July 12, 2024, Defendants sent Plaintiff a letter stating that Plaintiff owes Abbott $42,490.52, "tied to repayment of a sign-on bonus and relocation package and alleged overpayment of holiday credit hours." (*Id.* ¶ 25.) Moreover, after Plaintiff's termination, he secured employment at Siemens Healthineers ("Siemens") in Florida. (*Id.* ¶ 47.) In November 2024, in addition to attempting to collect the unpaid monies and pursuant to Section 13(b) of the Agreement, Defendants reached out to Siemens to enforce the non-competition clause in the Agreement. (*Id.* ¶ 48.) As a result of Defendants' "improper communication with Siemens," Plaintiff was terminated. (*Id.* ¶ 49.)

Accordingly, Plaintiff asserts five causes of action: 1) discrimination and disparate treatment in violation of the New Jersey Law Against Discrimination ("NJLAD") (Count One); 2) retaliation in violation of the NJLAD (Count Two); 3) interference and retaliation in violation of the FMLA (Count Three); 4) interference and retaliation in violation of the NJFLA (Count Four); and 5) tortious interference with a contract and/or prospective business relationship (Count Five). (*See generally id.*)

## II.  <u>SUBJECT MATTER JURISDICTION</u>

The Court has federal question jurisdiction over Plaintiff's FMLA claim under 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

## III.    <u>LEGAL STANDARD</u>

District courts may transfer a civil case to a different venue pursuant to 28 U.S.C. § 1404. Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. . . ."  28 U.S.C. § 1404(a).  The purpose of Section 1404(a) is "to prevent the waste of time, energy and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense. . . ."  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting *Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26–27 (1960)).

The Court's analysis under Section 1404(a) is flexible.  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29–30 (1988).  In *Gulf Oil Corp. v. Gilbert*, the Supreme Court listed several factors which fall into two categories: the private interests of the litigants; and the public interest in the fair and efficient administration of justice.  *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–509.  The private interest factors are: 1) plaintiff's choice of forum; 2) the relative ease of access to sources of proof; 3) the availability and cost of compulsory process for unwilling witnesses; 4) obstacles to a fair trial; 5) the possibility of viewing the premises, if viewing the premises would be appropriate to the action; and 6) all other factors relating to the expeditious and efficient adjudication of the dispute.  *Id.*  The public interest factors are: 1) the enforceability of the judgment; 2) practical considerations that could make the trial easy, expeditious, or inexpensive; 3) the relative administrative difficulty in the two fora resulting from court congestion; 4) the local interest in deciding local controversies at home; 5) the public policies of the fora; and 6) the familiarity of the trial judge with the applicable state law in diversity cases.  *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879–80 (3d Cir. 1995); *see also Cabrera v. Ledger SAS*, Civ. No. 24-182, 2025 WL 1017658, at *7 (N.D. Ill. Apr. 4, 2025) (the public interest considerations include "the

administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." (alteration in original)).

When, however, there is a valid forum selection clause, the traditional Section 1404(a) analysis is inapplicable because the forum selection clause "should be given controlling weight in all but the most exceptional cases." *Atl. Marine Constr. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 51 (2013). The Section 1404(a) analysis must be adjusted in three ways when a valid forum-selection clause exists: "district courts (1) must give no weight to the forum preferred by 'the party defying the forum-selection clause'; (2) must deem the private interests to 'weigh entirely in favor of the preselected forum' because the parties agreed to the preselected forum and thereby waived the right to challenge it as inconvenient; and (3) must proceed to analyze only public interests." *In re: Howmedica Osteonics Corp*, 867 F.3d 390, 402 (3d Cir. 2017) (quoting *Atl. Marine Const.*, 571 U.S. at 62–65).

## IV. <u>DISCUSSION</u>

In the Motion, Defendants argue that the case should be transferred to the United States District Court for the Northern District of Illinois because the Agreement contains a valid and enforceable forum selection clause that mandates that the federal court in the Northern District of Illinois has exclusive jurisdiction over any disputes arising out of or related to the Agreement.[6] (Moving Br. at 5–9.) Plaintiff argues that the dispute should remain in New Jersey because the forum selection clause is unenforceable as it is vague and ambiguous. (Opp'n Br. at 2.)

---

[6] The Agreement also allows for proceedings to be heard in Lake County, Illinois state court, but that is not relevant here because Plaintiff alleges a federal cause of action and Defendants seek to transfer the matter to the Northern District of Illinois.

As an initial matter, federal law controls the question of whether to enforce a forum selection clause. *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 58 (3d Cir. 2018); *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 384 (2d Cir. 2007) ("[F]ederal law should be used to determine whether an otherwise mandatory and applicable forum clause is enforceable . . . because enforcement of forum clauses is an essentially procedural issue."). However, "[t]he interpretation of a forum selection clause is an analytically distinct concept from the enforceability of that clause." *Collins v. Mary Kay, Inc.*, 874 F.3d 176, 181 (3d Cir. 2017). "The question of the scope of a forum selection clause is one of contract interpretation." *John Wyeth & Brother Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1073 (3d Cir. 1997). Third Circuit caselaw directs courts to use state law to determine the scope of a forum selection clause—that is, "'whether the claims and parties involved in the suit are subject' to the clause." *Collins*, 874 F.3d at 181 (quoting *Martinez v. Bloomberg LP*, 740 F.3d 211, 217 (2d Cir. 2014)). State law, therefore, typically governs whether the clause covers a particular claim, as well as whether the clause applies to a non-signatory as an intended beneficiary or closely related party. *Collins*, 874 F.3d at 183–85.

The parties, however, dispute whether Illinois or New Jersey state law applies to the interpretation and enforceability of the forum selection clause. (Moving Br. at 6; Opp'n Br. at 10.) Here, the Agreement clearly and unambiguously states that Illinois law applies to the enforceability of the Agreement, "without giving effect to conflict of laws." (*See* Agreement ¶ 15 ("This Agreement shall be construed, and its enforceability and the relationship of the parties shall be determined, in all respects under the laws of Illinois, without giving effect to conflict of laws.").) Therefore, although federal law typically governs the enforceability of forum selection clauses, Illinois state law applies to the validity of the forum selection clause here because "[i]n contracts containing a choice of law clause, . . . the law designated in the choice of law clause [is] used to

determine the validity of the forum selection clause." *Pomerantz v. Int'l Hotel Co., LLC*, 359 F. Supp. 3d 570, 577 (N.D. Ill. 2019) (citing *Abbott Lab's v. Takeda Pharmaceutical Co.*, 476 F.3d 421, 423 (7th Cir. 2007) ("Simplicity argues for determining the validity and meaning of a forum selection clause, in a case in which interests other than those of the parties will not be significantly affected by the choice of which law is to control.")); *Collins*, 874 F.3d at 183–84 ("[W]hen parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice."). Accordingly, because the parties have agreed that Illinois law applies to the enforceability of the clause "without giving effect to conflict of laws," the Court will use Illinois law to determine the validity of the forum selection clause.[7]

## A. VALIDITY AND ENFORCEABILITY OF THE FORUM SELECTION CLAUSE

The United States Supreme Court has emphasized that "[w]hen parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations." *Atl. Marine Const.*, 571 U.S. at 66. Thus, "[i]n all but the most unusual cases, . . . 'the interest of justice' is served by holding parties to their bargain." *Id.* Accordingly, forum selection clauses are "*prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972) (quotations omitted); *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 777 (7th Cir. 2014) (applying Illinois law). There are three situations where a forum selection clause is unreasonable: 1) the clause was a result of "fraud, undue influence, or overweening bargaining power;" 2) "the selected forum is so gravely difficult and inconvenient that [the complaining party] will for all practical purposes be deprived of its day in

---

[7] "Illinois law concerning the validity of forum selection clauses is materially the same as federal law." *IFC Credit Corp. v. Aliano Bros. Gen Contractors,* 437 F.3d 606, 611 (7th Cir. 2006); *Exhibit Sys., Inc. v. Pico Art Int'l Pte., Ltd.*, Civ. No. 15-2930, 2015 WL 3930265, at *2 (N.D. Ill. June 25, 2015).

court;" or 3) the enforcement of the clause "would contravene a strong public policy of the forum in which the suit is brought, declared by statute of judicial decision." *Bonny v. Society of Lloyd's*, 3 F.3d 156, 160 (7th Cir. 1993) (internal citations and quotations omitted).

When analyzing the enforceability of a forum selection clause under Illinois law, courts must determine whether the clause is mandatory or permissive and whether the clause is reasonable. *Schwarz v. Sellers Markets, Inc.*, 812 F. Supp. 2d 932, 936 (N.D. Ill. 2011); *Titan Rail, Inc. v. Sabic Innovative Plastics US, LLC*, 2012 WL 6969335, at *4 (Ill. App. Ct. Oct. 23, 2012) (applying Illinois law); *IFC Credit Corp. v. Rieker Shoe Corp.*, 881 N.E.2d 382, 389 (2007) (applying Illinois law to analyze whether a forum selection clause is reasonable); *Paper Express, Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 757 (7th Cir. 1992) (noting that a forum selection clause is valid if mandatory language is used and enforceable if it is reasonable and was not procured by fraud).[8] The Court addresses each in turn.

1. <u>Mandatory</u>

"[W]here venue is specified with mandatory or obligatory language, the clause will be enforced." *Elm One Call Locators, Inc. v. Lytx, Inc.*, Civ. No. 25-01086, 2025 WL 1601356, at *3 (C.D. Ill. Apr. 22, 2025) (quoting *IAC/InterActiveCorp v. Roston*, 44 F.4th 635, 643 (7th Cir. 2022)). A forum selection clause is mandatory if the parties' intended to make venue exclusive. *Exhibit Sys., Inc. v. Pico Art Int'l Pte., Ltd.*, Civ. No. 15-2930, 2015 WL 3930265, at *3 (N.D. Ill. June 25, 2015) (citing *Muzumdar v. Wellness Int'l Network, Ltd.*, 438 F.3d 759, 762 (7th Cir. 2006)).

---

[8] To be clear, Plaintiff does not perform this analysis because he believes that the Court should apply New Jersey law. As a result, Plaintiff has likely waived any argument as to the enforceability of the forum selection clause under Illinois law. *See Griglak v. CTX Mortg. Co., LLC*, Civ. No. 09-5247, 2010 WL 1424023, at *3 (D.N.J. Apr. 8, 2010); *Spence v. N.J.*, Civ. No. 19-21490, 2021 WL 1345872, at *4 (D.N.J. Apr. 12, 2021).

Here, the forum selection clause states that "[t]he parties agree to the exclusive jurisdiction of the state and federal courts in Illinois, in any action or proceeding arising out of or relating to this Agreement." (Agreement ¶ 16.) Additionally, the clause states that "any such action or proceeding shall be heard and determined in Lake County, Illinois state court or the Northern District of Illinois federal court." (*Id.*) The use of "exclusive" and "shall" connotes that the forum selection clause is mandatory. *See Roston*, 44 F.4th at 644 (reasoning that "shall" connotes mandatory language making the forum selection mandatory); *Smith v. Shettle*, 946 F.2d 1250, 1252 (7th Cir. 1991) (same). Additionally, the parties indicated via the forum selection clause that they would "waive any objection to the laying of venue of any such action or proceeding in any of the Lake County, Illinois state courts or Northern District of Illinois federal courts, as well as any claim that a party may have that any such action or proceeding has been brought in an inconvenient forum." (Agreement ¶ 16.) This additional language evidences the parties' intent to make Illinois the exclusive forum. *See Exhibit Sys., Inc.*, 2015 WL 3930265, at *3.

Accordingly, the Court finds that the forum selection clause is mandatory.

### 2. Reasonableness

The forum selection clause must also be reasonable. *Brandt v. MillerCoors, LLC*, 993 N.E.2d 116, 120 (Ill. App. Ct. 2013). "The burden of proving the unreasonableness of a selected forum . . . falls on the party opposing enforcement of the forum selection clause." *Id.* at 121. When determining the reasonableness of a forum selection clause, Illinois courts consider six factors: 1) which law governs the formation and construction of the contract; 2) the residency of the parties involved; 3) the place of execution and/or performance of the contract; 4) the location of the parties and witnesses participating in the litigation; 5) the inconvenience to the parties of any particular location; and 6) whether the clause was equally bargained for. *GPS USA, Inc. v. Performance Powdercoating*, 26 N.E.3d 574, 584 (Ill. App. Ct. 2015); *IFC Credit Corp.*, 881

N.E.2d at 390. Because Plaintiff has the burden of showing that the choice of forum is unreasonable, "any factor that is even neutral on the forum question essentially weighs in favor of the forum choice." *GPS USA, Inc.*, 26 N.E.3d at 584; *see also Spenta Enters., Ltd. v. Coleman*, 574 F. Supp. 2d 851, 856 (N.D. Ill. 2008) (parties that object to enforcing a forum selection clause bear the burden of proving the clause is unreasonable); *Calanca v. D & S Mfg. Co.*, 510 N.E.2d 21, 24 (Ill. App. Ct. 1987) (same). And "[e]ven if a majority of the factors favor litigation in another forum, this court may still conclude that the clause is reasonable." *Franklin Cap. Holdings, LLC v. Dejoy*, Civ. No. 14-8001, 2015 WL 9259801, at *3 (N.D. Ill. Dec. 18, 2015).

Defendants argue that all six factors favor reasonableness. (Moving Br. at 8.) Plaintiff fails to address the six factors but argues that the forum selection clause is unreasonable because litigating in Illinois would be "seriously inconvenient." (Opp'n Br. at 18.) For the reasons that follow, the Court finds that the forum selection clause is reasonable.

Putting aside Plaintiff's failure to meet his burden, the Court finds that the first factor— which law governs the formation and construction of the contract—favors reasonableness. Although Plaintiff lived in Florida at the time the Agreement was executed (Am. Compl. ¶ 12), "[w]here the parties choose a particular state's law, the sensible forum for adjudication is that state." *GPS USA, Inc.*, 26 N.E.3d at 584–85; *see also Brandt*, 993 N.E.2d at 120 ("[T]he first factor, the governing law, favors Colorado [because] [t]he agreement explicitly states that Colorado law governs without regard to conflicts of law."). Here, as stated above, the parties have designated Illinois law as the law to apply to disputes arising out of or relating to the Agreement "without giving effect to conflict of laws." (Agreement ¶ 15.) That includes the construction of the Agreement and enforceability of the forum selection clause.

The second factor—the residency of the parties—is not determinative because although Plaintiff's place of employment was New Jersey, he is a current resident of Florida and worked remotely there for most of his time at Abbott. (Am. Compl. ¶ 12.) Additionally, Abbott is a Delaware corporation with a principal place of business in Illinois. *Exhibit Sys., Inc.*, 2015 WL 3930265, at *3. Federal courts in Illinois recognize that "[r]egardless of where the case is litigated, one of the parties will be forced to litigate in an out-of-state forum." *Franklin Cap. Holdings, LLC*, 2015 WL 9259801, at *4 (finding that factor two is not determinative when the parties lived in two different states). Here, although Plaintiff has likely not met his burden of demonstrating unreasonableness under this factor, Plaintiff's residency in Florida makes this factor neutral. *Id.*; *see also GPS USA, Inc.*, 26 N.E.3d at 584 ("[A]ny factor that is even neutral on the forum question essentially weighs in favor of the forum choice.").

The third factor—the place of execution or performance of the Agreement—favors the reasonableness of Illinois because although Plaintiff was employed by a New Jersey branch of Abbott, it appears that the Agreement was executed by Plaintiff while he was in Florida, and not New Jersey. (*See* Am. Compl. ¶ 12; Boskovic Decl. ¶¶ 6, 7.) Defendants executed their portion of the Agreement in Illinois, which makes Illinois a reasonable forum. Additionally, Illinois is reasonable because Plaintiff's only connection to New Jersey is that he worked for a New Jersey branch of Abbott. As to performance under the Agreement, Plaintiff worked in New Jersey, but he worked remotely for most of his time at Abbott, and most of Plaintiff's claims in this action pertain to post-employment retaliation when he was in Florida by Defendants who are based in Illinois. (*See generally* Am. Compl.) Accordingly, a majority of Plaintiff's claims relate to conduct that occurred by Defendants in Illinois, which makes Illinois a reasonable forum.

The fourth factor—the location of the parties and witnesses—favors the reasonableness of Illinois. The parties have not identified the relevant witnesses, but based on the record before the Court, it appears that Boskovic, a likely key witness, resides in Illinois (Boskovic Decl. ¶ 13), Plaintiff resides in Florida (Am. Compl. ¶ 47), Defendant Sirchio resides in Pennsylvania (Boskovic Decl. ¶ 10), and other Abbott executives responsible for Plaintiff's termination and post-employment retaliation live in either Switzerland or Wisconsin (Boskovic Decl. ¶¶ 11, 12). Some potential witnesses may work or reside in New Jersey, but Plaintiff has not met his burden of demonstrating who those witnesses are and whether they will be burdened by appearing in Illinois.

The fifth factor—the inconvenience of the parties—favors the reasonableness of Illinois. Although Illinois would be arguably inconvenient to Plaintiff if he is a resident of either Florida or New Jersey, one party is almost always inconvenienced by litigation. *See Franklin Cap. Holdings, LLC*, 2015 WL 9259801, at *4. Moreover, under Illinois law, "even when one party claims inconvenience, if both parties freely entered the agreement contemplating such inconvenience should there be a dispute, one party cannot successfully argue inconvenience as a reason for rendering the forum clause unenforceable." *Id.*; *see also Calanca*, 510 N.E.2d at 23. Plaintiff, thus, has not demonstrated that a trial in Illinois would be so "gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." *Id.*

Finally, the sixth factor—whether the clause was equally bargained for—favors the reasonableness of Illinois. Plaintiff does not contend that the Agreement was the result of fraud or unequal bargaining power, and the Court finds nothing in the record to suggest that Plaintiff is an unsophisticated party. To the contrary, Plaintiff was the Senior Product Manager of the Global Core Assay Portfolio at Abbott and able to secure employment shortly after his termination. (Am.

Compl. ¶¶ 1, 12, 47.) *See Calanca*, 510 N.E.2d at 23 ("[E]ven when one party claims inconvenience, if both parties freely entered the agreement contemplating such inconvenience should there be a dispute, one party cannot successfully argue inconvenience as a reason for rendering the forum clause unenforceable."). Additionally, under Illinois law, "[a] contracting party is under a duty to learn the contents of a written contract before signing it." *Navman Wireless N. Am., Ltd. v. Texas Oilfield Servs., LLC*, Civ. No. 16-11356, 2017 WL 1199751, at *2 (N.D. Ill. Mar. 30, 2017) (citing *Betaco, Inc. v. Cessna Aircraft Co.*, 32 F.3d 1126, 1136 (7th Cir. 1994)). The Agreement, further, expressly allowed Plaintiff to "consult an attorney to review the Agreement" (Agreement ¶ 1(f)) and stated that Plaintiff "enter[ed] into th[e] Agreement voluntarily" without "coercion or duress" (Agreement ¶ 23). Thus, this factor favors the reasonableness of Illinois.

Accordingly, the Court finds that the forum selection clause is reasonable. Having found that the forum selection clause is both mandatory and reasonable, the Court further finds that it is valid and enforceable under Illinois law.

## B. SCOPE OF FORUM SELECTION CLAUSE

Next, the Court must determine whether Plaintiff's federal and state law claims arise out of or relate to the Agreement. Plaintiff argues that the contractual language of the Agreement "only covers contractual disputes brought under the Employee Agreement itself. There is no language that the provision could, or should be expanded to, apply to statutory retaliation claims brought under the NJLAD, FMLA, and NJFLA." (Opp'n Br. at 8.) Plaintiff further contends that the "Offer Letter[9] . . . does not contain the hallmark broad language—such as 'related to' or

---

[9] Plaintiff states that the "Offer Letter does not contain the hallmark broad language." (Opp'n Br. at 9.) But despite being referenced in the Amended Complaint, Plaintiff does not attach the "Offer Letter" to his Amended Complaint or otherwise provide it to the Court. Defendants do not discuss the "Offer Letter" in their moving papers. The Court

'concerning'—that Courts find sufficient to encompass statutory discrimination claims." (*Id.* at 9.) Defendants argue that the Agreement is clear and unambiguous and applies to Plaintiff's statutory claims. (Reply Br. at 4–7.)

For the reasons that follow, the Court finds that the Agreement encompasses Plaintiff's statutory claims. First, contrary to Plaintiff's contentions, the Agreement contains the broad language in the form of "arising out of" and "relating to." (Agreement ¶ 16.) Therefore, the forum selection clause is broad enough to cover Plaintiff's NJLAD, FMLA, and NJFLA claims.[10] *See Elm One Call Locators, Inc.*, 2025 WL 1601356, at \*2 (noting that the agreement at issue uses the wording "arising from or relating to this Agreement," which the Seventh Circuit has said presents a "[b]road forum selection clause[]" which applies "to the litigation of disputes concerning the contract, not just the litigation of claims arising out of the contract").

Second, there is a logical and causal connection between Plaintiff's claims and his employment and later termination under the Agreement. *See id.* ("forum selection clauses 'covering disputes "relating to" a particular agreement apply to any disputes that reference the agreement or have some "logical or causal connection" to the agreement.'" (quoting *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1086 (9th Cir. 2018) and citing *John Wyeth & Brother Ltd.*, 119 F.3d at 1074). The parameters of Plaintiff's employment are set out in the Agreement. For example, Paragraph 4 provides that Plaintiff "will comply with and discharge [his] duties at all times in accordance with any and all Abbott policies, as well as Abbott's Code of Business Conduct." (Agreement ¶ 4.) The Agreement also states that Plaintiff is an at will employee, meaning Abbott can "terminate the employment relationship at any time, with or

---

therefore infers that Plaintiff intended to refer to the "Agreement." Even if Plaintiff intended to refer to the "Offer Letter," the Agreement is the controlling document at issue in this dispute.
[10] The choice of law clause references Illinois law but only to the extent that it relates to the enforceability of the Agreement or the relationship of the parties.

without notice, and for any reason or no reason at all." (Agreement ¶ 21.) This latter paragraph demonstrates that the Agreement governs Plaintiff's employment and termination, which are the focal points of Plaintiff's unlawful termination and retaliation suit here. Moreover, some of Plaintiff's claims relate to the non-compete clause set forth in Paragraph 9 of the Agreement. (Agreement ¶ 9.) And, lastly, the Agreement states that Plaintiff may be terminated for the failure to comply with the Agreement. (Agreement ¶ 11.) Based on this express language in the Agreement, Plaintiff's statutory claims would not have arisen without the original offer of employment and execution of the Agreement. *See Am. Patriot Ins. Agency, Inc. v. Mut. Risk Mgmt., Ltd.*, 364 F.3d 884, 888 (7th Cir. 2004) (explaining that forum selection clauses would be empty if "a plaintiff can defeat a forum-selection clause by its choice of provisions to sue on, of legal theories to press, and of defendants to name in the suit."). Therefore, it is clear to the Court that Plaintiff's claims are within the scope of the Agreement.[11]

## C. TRANSFER UNDER 1404(a)

The Court finally turns to whether the Section 1404(a) factors warrant transfer. Section 1404(a) permits a district court to transfer an action to another district where it could have been initiated "[f]or the convenience of parties and witnesses [and] in the interest of justice." 28 U.S.C. § 1404.[12] Ordinarily, a court would weigh both the private and public factors in determining

---

[11] Were the Court to apply New Jersey law, as Plaintiff argues, this conclusion would still be supported by caselaw in this circuit. Courts generally interpret language in a forum selection clause encompassing any claims "with respect to" an agreement broadly to mean "connected by reason of an established or discoverable relation." *Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA*, 779 F.3d 214, 220 (3d Cir. 2015) (quoting *Huffington v. T.C. Grp., LLC*, 637 F.3d 18, 22 (1st Cir. 2011) and *Coregis Ins. Co. v. Am. Health Found., Inc.*, 241 F.3d 123, 128–29 (2d Cir. 2001)). An action need not even allege contract-based claims in order for a forum selection clause in a contract to be enforced. *See Ashall Homes Ltd. v. ROK Ent. Grp. Inc.*, 992 A.2d 1239, 1253 (Del. Ch. 2010) (forum selection clause applies when claims "grow out of the contractual relationship"); *Crescent Int'l Inc. v. Avatar Communities, Inc.*, 857 F.2d 943, 944 (3d Cir. 1988). "If this were not the rule, a plaintiff could easily avoid a forum selection clause by artfully pleading non-contract claims that stem from the contractual relationship. *See Carlyle Inv. Mgmt.*, 779 F.3d at 220; *Ashall Homes*, 992 A.2d at 1252; *Crescent Int'l*, 857 F.2d at 945.
[12] Venue is proper in the Northern District of Illinois because Abbott has a principal place of business in Illinois and it is subject to personal jurisdiction there. *See* 28 U.S.C. §§ 1391(b), (c)(2).

whether transfer is appropriate. *Jumara*, 55 F.3d at 879. However, here, the existence of a valid and enforceable forum selection clause means that the parties "waive[d] the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Atl. Marine Const.*, 571 U.S. at 63. Thus, the Court need not consider the private interest factors. *See id.*

Defendants argue that the public interest factors weigh in favor of transfer to the Northern District of Illinois. (Moving Br. at 10.) Plaintiff argues that the public interest factors favor keeping the case in New Jersey because litigating in Illinois is "seriously inconvenient." (Opp'n Br. at 18.)

On a review of the public interest factors, this is not one of the "rare[]" and "unusual cases" where the public factors defeat transfer. *Atl. Marine Const.*, 571 U.S. at 64 ("Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases.").

The first factor—the enforceability of a judgment—is neutral. There is no dispute that a judgment would be equally enforceable in Illinois and New Jersey.

The second factor—the practical considerations of litigation—favors transfer. Plaintiff states without support that "[a]ll witnesses and other relevant evidence are all located in New Jersey, not Illinois." (Opp'n Br. at 19.) But Plaintiff does not identify the witnesses or the relevant evidence. For their part, Defendants provide a declaration stating that many of the relevant witnesses are located in Illinois and that Plaintiff worked remotely for most of his time at Abbott. (*See* Boskovic Decl.) Therefore, considering that the parties and witnesses are from states other than New Jersey, as a logistical matter, it appears that a trial in the Northern District of Illinois would be just as practicable as a trial in the District of New Jersey.

The third factor—the administrative difficulties flowing from court congestion—favors transfer. Although the Court has discretion to and is capable of retaining this case despite the alleged congestion in this District, the District of New Jersey is well-known to have a heavy case load and "one of the largest total number of filings recorded in the country." *Lapidow v. San Antonio Marriott Rivercenter*, Civ. No. 23-00805, 2024 WL 863426, at *4 (D.N.J. Feb. 29, 2024) (quoting *Guarino v. W. Union Co.*, Civ. No. 20-5793, 2021 WL 3286640, at *10 (D.N.J. Aug. 2, 2021)); *Reed v. JTH Tax, Inc.*, Civ. No. 07-1804, 2007 WL 2416445, at *5 (D.N.J. Aug. 21, 2007) (finding that court congestion favored transfer where the median time from filing to trial was 30.7 months in transferor forum and 9.6 months in transferee forum). Although Plaintiff submitted a chart purporting to illustrate that the "District of New Jersey is less congested than courts in the Northern District of Illinois" (Opp'n Br. at 19), the chart, in fact, demonstrates the opposite. The chart illustrates that, as of September 30, 2024, there were 12,362 private civil cases commenced in the District of New Jersey as opposed to 11,066 in the Northern District of Illinois. (ECF No. 10-1.) The chart also demonstrates that, as of September 30, 2024, there were 13,589 cases commenced by the United States in the District of New Jersey as opposed to 12,499 in the Northern District of Illinois. Accordingly, this factor weighs in favor of transferring this case to the Northern District of Illinois.

The fourth factor—the local interest in having localized controversies decided at home—favors transfer. Although New Jersey has a strong interest in protecting employees employed in its state from discrimination and retaliation, Abbott is headquartered in Illinois and the parties executed a valid and enforceable forum selection clause, which outweighs the fact that Plaintiff was injured when working for Abbott's New Jersey branch. *See Warwick v. Schneider Nat'l, Inc.*, Civ. No. 20-1995, 2020 WL 5891407, at *7 (N.D. Ill. Oct. 5, 2020) ("Defendants are headquartered

in Wisconsin, meaning there is a local interest in having this controversy decided in Wisconsin."); *see also Peck v. Jayco, Inc.*, 665 F. Supp. 3d 607, 615 (D.N.J. 2023) ("New Jersey public policy strongly favors the enforcement of forum-selection provisions."). Moreover, Plaintiff worked remotely from Florida despite working for Abbott's New Jersey location, and part of his alleged injury occurred post-termination, when Plaintiff was in Florida and not New Jersey.

The fifth factor—the public policies of the fora—favors transfer. As other districts courts have recognized, "New Jersey public policy strongly favors the enforcement of forum-selection provisions." *Peck v. Jayco, Inc.*, 665 F. Supp. 3d 607, 615 (D.N.J. 2023); *see also Mancuso v. L'Oreal USA, Inc.*, Civ. No. 20-5701, 2021 WL 365228, at \*6 (D.N.J. Feb. 1, 2021) ("[T]he fifth factor weighs strongly in favor of enforcing the forum selection clause because of New Jersey . . . public policy in favor of enforcing contractual provisions, including forum selection clauses."); *Cadapult Graphic Sys., Inc. v. Tektronix, Inc.*, 98 F. Supp. 2d 560, 568 (D.N.J. 2000) (New Jersey's public policy is to generally enforce forum selection clauses).

Finally, the sixth factor—the familiarity of the trial judge with the applicable law—is neutral.[13] While it is preferable that a case involving state law be decided by the court familiar with the applicable law, "district courts are frequently called upon to interpret and apply the law of a state other than that in which they sit." *Bensalem Lodging Assocs., LLC v. Holiday Hosp. Franchising, LLC*, 575 F. Supp. 3d 532, 541 (E.D. Pa. 2021); *see also Warwick*, 2020 WL 5891407, at \*7 ("[C]ourts are often called upon to decide substantive legal questions based upon another state's laws."); *Booth v. Citizens Bank, N.A.*, Civ. No. 22-5276, 2023 WL 3916275, at \*6

---

[13] As part of this factor, Illinois federal courts consider "the avoidance of unnecessary problems in conflicts of laws or in the application of foreign law," *Pinkus v. Sirius XM Radio Inc.*, 255 F. Supp. 3d 747, 752 (N.D. Ill. 2017), and the "unfairness of burdening citizens in an unrelated forum with jury duty," *Fischer v. Magyar Allamvasutak Zrt.*, 777 F.3d 847, 868 (7th Cir. 2015). These additional considerations weigh in favor of transfer in light of the valid choice of law provision in the Agreement, and the fact that Illinois is not an "unrelated forum" given that Abbott is headquartered there. *See Pinkus*, 255 F. Supp. at 752 ("Because New York law applies [as stated in the agreement], the public interest favors a New York forum.").

(D.N.J. June 9, 2023) ("[This] [] factor is neutral because, although this Court may have more familiarity with the NJLAD, we have 'full faith in the judges of the District of [Rhode Island] to properly apply' it." (citation omitted)); *DiMarco v. Coates*, Civ. No. 19-1559, 2020 WL 5593767, at *3 (D.N.J. Sept. 18, 2020) ("[S]ince federal courts are generally well-equipped to apply the laws of other states and frequently do so in diversity cases, the Court finds that familiarity of the trial judge with applicable state law is a neutral factor in this instance."). Moreover, Plaintiff's claims are not "so unique as to be beyond comprehension" of an Illinois federal court. *See Arion, LLC v. LMLC Holdings, Inc.*, Civ. No. 18-5904, 2018 WL 6590533, at *4 (N.D. Ill. Dec. 14, 2018) ("[Plaintiff] provides no support that [his claims] are "so unique as to be beyond the comprehension" of a Wisconsin federal court. (quoting *Amoco Oil Co. v. Mobil Oil Corp.*, 90 F. Supp. 2d 958, 962 (N.D. Ill. 2000))).

Ultimately, nothing in the public interest analysis strongly militates in favor of the Court retaining jurisdiction. *See Atl. Marine Const.*, 571 U.S. at 63 (citation omitted). Transfer of Plaintiff's claims is therefore appropriate under Section 1404(a).

## V.     **CONCLUSION**

In sum, based on the valid and enforceable forum selection clause, the Court exercises its discretion to transfer this case pursuant to Section 1404(a). Accordingly, for the reasons stated above, the Court will **GRANT** Defendants' Motion. This matter will be transferred to the United States District Court for the Northern District of Illinois. An appropriate Order will follow.

Date: July 29, 2025

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**